IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| MIGUEL HERNANDEZ<br><br>Petitioner,<br><br>v.<br><br>DENNIS UDZINSKI, in his official capacity, LADEON FRANCIS, in his official capacity, TODD LYONS, in his official capacity, KRISTI NOEM, in her official capacity, and PAMELA BONDI, in her official capacity,<br><br>Respondents. | Civil Action No.<br><br>2:25-CV-373-RWS |

## ORDER

This matter comes before the Court on Petitioner Miguel Hernandez's Motion to Enforce Judgment or Alternatively, to Show Cause Re Contempt [Dkt. 16 – Pltf.'s Mot. to Enforce JMT]. Having reviewed the record and the parties' briefing, the Court enters the following Order.

### BACKGROUND

Petitioner brought this habeas action to challenge his custody by U.S. Immigrations and Customs Enforcement (ICE). [Dkt. 1 – Petition]. On November 24, 2025, the Court held that Petitioner was wrongfully detained without bond

under 8 U.S.C. § 1225(b)(2)(A). [See Dkt. 10 – Court Order]. Instead, he should have been detained under the discretionary bond provisions of 8 U.S.C. § 1226(a). [Id.]. The Court ordered Respondents to give Petitioner a prompt bond hearing pursuant to § 1226(a), stating that "in the event Petitioner is released on bond, Respondents are **ENJOINED** from rearresting Petitioner" unless he commits a new violation of law or becomes subject to a final deportation order. [Id. at 17–18]. Respondents gave Petitioner a bond hearing two days later. [Dkt. 11 – Status Report, at ¶ 2]. After the bond hearing, an immigration judge (IJ) ordered Petitioner's release on a $5,500 bond, and ICE released him from custody after he paid it. [Id. at ¶ 4; Dkt. 16, at 2].

The present dispute is about what happened next. Four days after Petitioner's release from custody, ICE imposed a mandatory GPS ankle monitor on Petitioner and required that he enroll in the Intensive Supervision Appearance Program ("ISAP"). [Dkt. 16, at 2]. The IJ's bond order did not mandate GPS monitoring, enrollment in ISAP, or any other conditions on Petitioner's release. [See Dkt. 16-1 – IJ Order]. After ICE imposed these conditions, Petitioner did not challenge them before the IJ. Instead, he filed this motion, asking that the Court (1) direct Respondents to remove any conditions of release on him that were not mandated in the IJ's bond order and (2) alternatively, hold Respondents in

contempt of the Court's November 24, 2025, Order because the conditions constitute a "de facto re-arrest." [Dkt. 16, at 13, 18]. The Court addresses Petitioner's requests below.

## DISCUSSION

I.  **Did the government have the authority to impose conditions of release on Petitioner?**

The Court first assesses whether ICE or the IJ had the legal authority to impose conditions on Petitioner upon his release on bond. The parties initially dispute whether this issue is properly before the Court. Respondents argue that any question concerning Petitioner's conditions of release lies outside the scope of his habeas petition and that "a contempt motion is not the proper vehicle for such a challenge." [Dkt. 19, at 7]. Petitioner says that his conditions of release fall "squarely" within the bounds of his petition and that he can properly challenge those conditions through this motion. [See Dkt. 16, at 10].

The Court elects to consider the merits of Petitioner's challenge to his conditions of release. Respondents are correct that Petitioner's habeas petition challenges the legality only of his initial confinement, and ICE has since released him from that confinement on bond. [See Dkt. 1; Dkt. 16, at 2]. But Petitioner cites caselaw suggesting that the Court may review his conditions of release if they are

inconsistent with ICE's own regulations or with due process.[1] [See Dkt. 16, at 17]; see, e.g., N- N- v. McShane, 2025 WL 3143594, at *4 (E.D. Pa. Nov. 10, 2024) ("[F]ederal agencies must follow their own binding regulations and formally established procedures . . . ." (citing United States ex rel. Accardi v. Shaughnessy, 74 S. Ct. 260 (1954))). Thus, the Court considers whether the conditions imposed on Petitioner are consistent with the applicable regulations and with due process.

The applicable regulations here are those that implement the Immigration and Nationality Act (INA). The INA generally allows the government to impose conditions of release on noncitizens who are released on bond, like Petitioner. See 8 U.S.C. § 1226(a)(2) (authorizing Attorney General to "release the alien on bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or conditional parole." (emphasis added)). The implementing regulations, in turn, align with the INA and also authorize conditions of release. See 8 C.F.R. § 1236.1(c)(8) (authorizing ICE to "release an alien . . .

---

[1] Petitioner argues, and the Court agrees, that his ankle monitoring and reporting requirements constitute "custody" within the meaning of the habeas statute. See 28 U.S.C. § 2241; Clements v. Florida, 59 F.4th 1204, 1213 (11th Cir. 2023) ("Non-citizens released on supervision while awaiting a final decision in their immigration proceedings are deemed to be 'in custody' for purposes of habeas corpus." (quoting United States ex rel. Marcello v. Dist. Dir. of INS, New Orleans, 634 F.2d 964, 971 & n.11 (5th Cir. 1981))). The Court thus maintains its habeas jurisdiction over this matter.

under the conditions at [8 U.S.C. § 1226(a)(2)] . . . ." (emphasis added)). As for the specific conditions at issue here, nothing in the statutes or regulations indicate that ankle monitoring or enrollment in ISAP are inherently improper, and Petitioner cites no authority to that effect. Therefore, the Court finds that the conditions of release imposed on Petitioner are substantively proper under the INA and its implementing regulations.

But Petitioner challenges not just the conditions of release themselves but also the *procedures* through which ICE imposed them. That is, Petitioner argues that ICE violated its own regulations by circumventing the IJ and imposing its own "supplementary conditions" after the IJ's bond order issued. [See Dkt. 16, at 7–8].

The regulatory framework that governs ICE and IJs is "sequential and must be read together to avoid surplusage." McShane, 2025 WL 3143594, at *3. The framework authorizes ICE, at the time of arrest, to detain a noncitizen or to grant him conditional parole as an initial matter. See 8 C.F.R. §§ 1236.1(c), (d)(1). Thus, if the noncitizen is released, ICE may impose conditions on that release. After ICE makes an "initial custody determination," the noncitizen may then "request amelioration of the conditions under which he or she may be released." Id. § 1236.1(d)(1). The IJ can "exercise the authority in [8 U.S.C. § 1226] . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any."

5

Id. And as mentioned, the IJ may also grant "amelioration of the conditions" of release upon request. Id.

The parties agree that this regulatory framework is "sequential" in that ICE initially sets conditions of release, after which an IJ may "ameliorate" them. [Dkt. 16, at 7; Dkt. 19, at 8]. But they disagree on the order of operations, *i.e.*, whether ICE can set conditions *after* an IJ orders that the noncitizen be released on bond. Petitioner argues that once an IJ orders release, that forecloses ICE from adding any conditions to the release. [See Dkt. 16, at 7–8 ("Once an Immigration Judge has exercised his or her authority to redetermine custody and set the conditions of release, ICE cannot unilaterally impose additional, more restrictive conditions.")]. Respondents say that "after an initial custody hearing" wherein an IJ releases a noncitizen, ICE may impose conditions of release, and then the noncitizen may return to the IJ and seek amelioration of them. [See Dkt. 19, at 8–9].

The parties concede that IJs lack the power to unilaterally set conditions of release. [Compare Dkt. 19, at 8 ("Immigration Judges do not have the authority in the first instance to order conditions of release, such as monitoring.") with Dkt. 20, at 6 n.1 ("[A]n IJ's authority is limited to what is explicitly provided by statute and regulation. . . . [T]he IJ does not have explicit statutory authority to authorize ankle

6

monitors and had the IJ imposed one, it would have been *ultra vires*.")].² And the regulations do not obviously appear to grant IJs the power to set conditions of release—only the power to "ameliorate" them. Compare 8 C.F.R. § 1236.1(d) (authorizing IJs to "determine the amount of bond") with id. (authorizing IJs to consider "an application for amelioration of the terms of release"). Also, it seems that the Board of Immigration Appeals (BIA) has not directly addressed whether IJs may set conditions of release without ICE imposing them first. See Aguilar-Aquino, 24 I&N Dec. 747, 753 (BIA 2009) (leaving open the question of "the Immigration Judge's authority to set conditions beyond the establishment of a monetary bond"). Given the parties' agreement on this point, and in view of the regulations, the Court finds that the IJ here lacked authority to impose conditions of release on Petitioner other than monetary bond.

With that in mind, the Court concludes that ICE did not violate its own regulations. Consider the sequence of events. First, ICE detained Petitioner, as it was allowed to. See 8 C.F.R. § 1236.1(b)(1) ("[T]he respondent may be arrested and taken into custody . . . ."). Second, after ICE's initial custody determination,

---

² This concession is interesting given the weight of caselaw suggesting that IJs do have this power. See, e.g., J.G. v. Warden, Irwin Cnty. Det. Center, 2021 WL 5413661, at *2 (M.D. Ga. Jan. 15, 2021) ("The IJ may also set conditions of release such as subjecting the noncitizen to electronic monitoring." (citing 8 U.S.C. § 1226(a)(2))).

7

the IJ "determine[d] the amount of bond" and allowed Petitioner to be released from custody. Id. § 1236.1(d)(1). Nothing suggests that ICE had requested or imposed any conditions at that point, so the IJ had no conditions to ameliorate.[3] Third, once the IJ released Petitioner, ICE promptly imposed the ankle monitor and ISAP enrollment, as it was allowed to do. [Dkt. 16, at 2]; see 8 C.F.R. § 1236.1(c)(8). And fourth, Petitioner never returned to the IJ to seek amelioration of these conditions, which was the proper avenue to initially challenge them. Accordingly, ICE complied with its own regulations, and the Court declines to direct the cessation of Petitioner's ankle monitor or ISAP enrollment on this ground.

Petitioner cites several cases to support that the regulations forbid ICE from adding conditions of release after an IJ's bond determination, but each is distinguishable. In N- N- v. McShane, the court held that ICE cannot impose conditions of release on a noncitizen after an IJ grants bond without conditions. See 2025 WL 3143594, at *3 ("Permitting ICE to impose additional conditions *after* an immigration judge has ordered release and set conditions

---

[3] The Court agrees with Respondents that it would have been "fruitless" to appeal the IJ's bond order for failure to impose conditions on Petitioner's release because ICE "cannot ask the Board of Immigration Affairs to order Immigration Judges do something they cannot do." [Dkt. 19, at 9].

8

renders the administrative adjudicatory process null."). But in McShane, the parties did not concede as they do here that IJs lack the power to set conditions at all. Similarly, the court in Orellana Juarez v. Moniz reached the same conclusions as McShane but also assumed that the IJ "has the authority to determine the alien's detention conditions." 788 F. Supp. 3d 61, 69 (D. Mass. 2025) (internal quotation marks omitted). Because the parties here agree that the IJ lacked authority under the regulations to set conditions on Petitioner, it makes sense that ICE had an opportunity to set them after Petitioner was released. Otherwise, a noncitizen whom ICE initially determined should be placed in custody and who then has a bond set by an IJ could not be subjected to conditions on that bond. That would be a nonsensical result.

Lastly, Petitioner argues that ICE's "failure to adhere to established procedures implicates Petitioner's fundamental liberty interests and thus violates his right to due process." [See Dkt. 16, at 11]. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 121 S. Ct. 2491, 2498 (2001). The Court recognizes that subjecting Petitioner to electronic surveillance implicates his liberty and thus his due process rights. But the Court also recognizes that such surveillance is permissible in many

circumstances and that here, ICE adhered to the proper procedures. Further, Petitioner may seek review of his conditions of release before an IJ or before the ICE Director, and Petitioner does not dispute the adequacy of this review. See 8 C.F.R. § 1236.1(d)(1) ("[A]n application for amelioration of the terms of release [before an IJ] must be filed within 7 days of release."); id. § 1236.1(d)(2) ("After expiration of the 7–day period in paragraph (d)(1) of this section, the respondent may request review by the district director of the conditions of his or her release."); id. § 1236.1(d)(3) (permitting appeal to BIA of both IJ and director review). Accordingly, the Court rejects Petitioner's due process claim and concludes that the government had authority to impose conditions of release on him as it did here.

**II.     Are Respondents in contempt of the Court's November 24, 2025, order?**

Next, the Court turns to whether Respondents' imposition of the ankle monitor and enrollment in ISAP constitute contempt of the Court's November 24, 2025, order. Because Petitioner has not established that Respondents violated the letter or spirit of that order, the Court declines to hold Respondents in contempt.

"In a civil contempt proceeding, the petitioning party bears the burden of establishing by clear and convincing proof that the underlying order was violated." Howard Johnson Co., Inc. v. Khimani, 892 F.2d 1512, 1516 (11th Cir. 1990) (internal quotations omitted). After this *prima facie* showing is made, "the

burden of production shifts to the alleged contemnor to show a present inability to comply that goes beyond a mere assertion of inability." Id. (internal quotations omitted). The "focus of the court's inquiry in civil contempt proceedings is not on the subjective beliefs or intent of the alleged contemnors in complying with the order, but whether in fact their conduct complied with the order at issue." Id. To show an inability to comply, the alleged contemnor must show he has "made in good faith all reasonable efforts to comply." Citronelle-Mobile Gathering, Inc. v. Watkins, 943 F.2d 1297, 1301 (11th Cir. 1991) (internal quotations omitted).

Petitioner has failed to adduce clear and convincing evidence that Respondents have "rearrested" him in violation of the Court's order.[4] [See Dkt. 10, at 17–18]. For one, Respondents did not clearly violate the text of the order. The plain meaning of the word "arrest" means "a seizure or forcible restraint" or "the taking or keeping of a person in custody by legal authority." Arrest, Black's Law Dictionary (12th ed. 2024). The Eleventh Circuit has said (in the criminal context) that the circumstances that indicate an arrest include "the blocking of an individual's path or the impeding of his progress; the display of weapons; the

---

[4] Petitioner argues for the first time in his reply brief that Respondents conducted an "unauthorized arrest that violates 8 U.S.C. § 1357(a)(2)." [Dkt. 20, at 9]. While the Court need not consider this argument, see Williams v. Hill, 2022 WL 1715212, at *4 (N.D. Ga. Mar. 31, 2022), it is inconsequential because Respondents did not arrest Petitioner.

number of officers present and their demeanor; the length of the detention; and the extent to which the officers physically restrained the individual." United States v. Hastamorir, 881 F.2d 1551, 1556 (11th Cir. 1989); see also United States v. Vasquez-Ortiz, 344 F. App'x 551, 553 (11th Cir. 2009).

Here, Petitioner's conditions of release do not constitute an "arrest" within the plain meaning of the word. Respondents asked Petitioner to attend a meeting at the ICE field office, at which he received the ankle monitor and enrolled in ISAP. [Dkt. 16, at 2]. Nothing in the record suggests that anybody seized or forcibly restrained Petitioner. See Hastamorir, 881 F.2d at 1556.

Nor did Respondents violate the spirit of the Court's order. The Court's November 24, 2025, order sought to ensure that Petitioner remained out of jail in the event that the IJ granted him bond under 8 U.S.C. § 1226(a). The Court never intended to override the federal regulations discussed above or to thwart ICE's authority to impose conditions of release on Petitioner under those regulations. Accordingly, because Petitioner has failed to establish a prima facie showing that Respondents violated a Court order, the Court declines to hold Respondents in contempt.

## CONCLUSION

For the foregoing reasons, Petitioner's Motion to Enforce Judgment or Alternatively, to Show Cause Re Contempt [Dkt. 16] is **DENIED**.

**SO ORDERED** this 16th day of December, 2025.

_____
**RICHARD W. STORY**
United States District Judge